IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 2:18-cr-00008 |
| | ) | JUDGE RICHARDSON |
| STEVEN R. GORDY | ) | |
| | ) | |

**MEMORANDUM OPINION & ORDER**

Before the Court is Defendant Steven Gordy's Motion to Suppress (Doc. No. 28, "the Motion"). Through the Motion, Defendant seeks to suppress all evidence obtained as fruits of an execution of a search warrant of his home. Defendant contends that the search warrant was invalid because on its face, the warrant affidavit failed to establish probable cause to search his home nor established the requisite nexus to his home. Therefore, according to Defendant, the search was in violation of his Fourth Amendment and Fourteenth Amendment rights. The Government has responded and argues that the warrant affidavit demonstrated both probable cause and the requisite nexus to Defendant's residence. The Government also asserted alternatively that the good-faith exception applied. (Doc. No. 36). Defendant replied to the Government's response. (Doc. No. 37). The parties' arguments will be explored in turn.

**I.    BACKGROUND[1]**

On May 8, 2017, AG[2] and her mother, Michelle Gordy, met with Lt. Darrell Taylor of the Macon County Sheriff's Department. AG informed Lt. Taylor that Defendant, AG's step-father,

---

[1] The facts not derived from the search warrant (Doc. No. 28-1) or the search warrant affidavit (Doc. No. 28-2) are taken from Defendant's factual recitations in his Motion to Suppress (Doc. No. 28). For purposes of the resolving the Motion, the Court will assume these facts to be true.

[2] AG turned 18 years old in late 2016, but she informed Lt. Taylor that Defendant sexually abused her and videotaped the encounters for years prior to her turning 18. (*See* Doc. No. 28-2).

1

had sexually abused her (and her two older sisters) for several years and that Defendant currently resided at 4480 Gamaliel Road, Red Boiling Springs, Tennessee in Macon County.

On May 10, 2017, Lt. Taylor sought a search warrant to search Defendant's home and any electronic devices found therein for child pornography. (Doc. No. 28-1). Lt. Taylor submitted an affidavit that made the following allegations to establish probable cause:

> 1. I, Lt. Detective Darrell Taylor, have been a law enforcement officer for 20 years. . . [and I] ha[ve] received specialized training in the sell [*sic*] or distribution of Child Pornography. . . .
>
> 2. On May 8th, 2017, [AG] D.O.B.[REDACTED] and Amy Michelle Gordy (mother) reported to Lt. Detective Darrell Taylor that her stepfather Steven Gordy had been sexually assaulting [AG] and her sister's [*sic*] for the past 7 years.
>
> 3. I, Lt. Detective Darrell Taylor, was made aware that there was unlawful recording of the children by Steven Gordy by talking to [AG]. [AG] stated that Steven Gordy has recorded and took pictures of the sex acts that he committed with the her [*sic*] and her sisters [IG] D.O.B.[REDACTED] And [TG] D.O.B.[REDACTED].
>
> 4. There has been forensic interviews with the 3 girls in which they did disclose that sex acts had took place.
>
> 5. [AG] reported that Steven Gordy had been having sex with her since she was 8 years old years old and they have been living in Macon County for the last 4 years.
>
> 6. I, Lt. Detective Darrell Taylor did talk to a Detective from Haywood County North Carolina that is also investigating a sex crime that has took place in their state with the same persons, due to the fact that Michelle Gordy had moved to North Carolina and Steven Gordy coming to her residents [*sic*] to see the girls.
>
> 7. After receiving information of the Sexual Acts and the recording devices, and Steven Gordy's unusual activity around the children, my training and experience in Law Enforcement, along with training and experience with investigating child sex abuse, child molestation, and pedophilia; I, Lt. Detective Darrell Taylor, believe there is probable cause that Steven Gordy was making and now possesses illegal recordings the underage stepdaughter's [*sic*]. I also have probable cause to believe there are other recording devices, SD card, Media storage devices, Laptops, Computers, Cellphones, and pictures located inside of the home of Steven Gordy located at [] Gamaliel Road in Red Boiling Springs, TN. I believe Steven Gordy was using his home cameras in order to obtain sexually explicit images of a juvenile female for his own sexual gratification.

8. Affiant has also received training that many times child sex abusers use their home and position as an authority figure, parent, or family member to gain the trust of their victims. Perpetrators lure their victims inside their way of life and use many methods of operation to obtain a goal of self-gratification which include but are not limited to: covert cameras, surveillance equipment, and peep holes along with the recording and trading of video and pictures with other pedophilia addicted individuals.

9. I have conducted this investigation as a supervising Detective of the Macon County Sheriff's Department, and I am fully aware of the factual information and material within this Affidavit.

(Doc. No. 28-2).

A Macon County General Sessions Court judge issued a search warrant for any electronic devices and storage media located at 4480 Gamaliel Road, Red Boiling Springs, Tennessee. State authorities thereafter executed the warrant, discovering electronic storage media that contained child pornography. State authorities charged Defendant with ten counts of statutory rape by an authority figure, ten counts of incest, and ten counts of especially aggravated sexual exploitation. These charges are currently pending in the Circuit Court of Macon County, Tennessee.

Based on the items that were found in Defendant's home, the Federal Government subsequently obtained another search warrant to search the items already seized from Defendant. (Doc. No. 28-3). The Federal Government thereafter charged Defendant with several child pornography crimes (ten counts for violations of 18 U.S.C. §§ 2251(a) and 2251(e) and one count for a violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2252A(b)(2)). (Doc. No. 1). Defendant now moves to suppress the items found in his home.

## II.     ANALYSIS

### A. *Probable Cause to Search*

"Probable cause 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *United States v. Christian*, 925 F.3d 305, 311 (6th Cir. 2019)

(en banc) (citing *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)). In its recent en banc decision in *Christian*, the Sixth Circuit instructed that probable cause should be determined "[v]iewing the 'totality of the circumstances,' *Florida v. Harris*, 568 U.S. 237, 244 [] (2013), through the 'lens of common sense,' as the Supreme Court has instructed, *id*. at 248[.]" *Id*. at 309. The court further explained:

> Time and again the Supreme Court has emphasized that [p]robable cause is not a high bar to clear. Where, as here, a magistrate has issued a search warrant based on probable cause, we do[ ] not write on a blank slate. Rather, the magistrate's probable-cause determination should be paid great deference, and we overturn that decision only if the magistrate arbitrarily exercised his or her authority. We are not permitted to attempt a *de novo* review of probable cause.

*Id*. at 311 (citations and quotation marks omitted). The "'haste of a criminal investigation' under which officers often draft an affidavit supporting a search warrant" is also relevant to a probable cause analysis. *Id*. at 310. Courts should keep in mind that "police officers are mostly non-lawyers who must draft search-warrant affidavits 'on the basis of nontechnical, common-sense judgments[.]'" *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 235-36 (1983)).

Defendant argues that the allegations in the warrant affidavit do not establish probable cause and cites *United States v. Hodson*, 543 F.3d 286 (6th Cir. 2008) in support. In *Hodson*, the court held that "it is beyond dispute that the warrant was defective for lack of probable cause" because "[the detective] established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)." 543 F.3d at 292. The court explained that "'standing alone, a high incidence of child molestation by persons convicted of child pornography crimes may not demonstrate that a child molester is likely to possess child pornography.'" *Id*. at 293 (quoting *United States v. Adkins*, 169 F. App'x 961, 967 (6th Cir. 2006)). Defendant analogizes this case to *Hodson* and argues that "the allegations that

4

[Defendant] has molested his stepdaughters at some place and at some time was a far cry from probable cause to search his home for child pornography." (Doc. No. 28 at 7).

The Court disagrees with Defendant. The warrant affidavit here is materially distinguishable from the warrant affidavit at issue in *Hodson* due to the following allegations it contains: (1) AG, who had just recently turned 18, stated Defendant had sexually assaulted her for the past seven years;[3] (2) the Defendant "*recorded and took pictures* of the sex acts"; (3) AG stated that she had lived with Defendant in Macon County, Tennessee for the past four years; and (4) Defendant currently resided at 4480 Gamaliel Road in Red Boiling Springs, Tennessee. (Doc. No. 28-2) (emphasis added). Allegations of recording and photographing sex acts with a minor were absent from the warrant affidavit in *Hodson*. Therefore, the warrant here established probable cause not only for child molestation, but also for possession of child pornography. *See Enyart v. Coleman*, 29 F. Supp. 3d 1059, 1093 (N.D. Ohio 2014) (finding that a warrant affidavit established probable cause and reasoning that "[u]nlike *Hodson*, the officers here were looking for evidence of the very crime for which they had information, not for evidence of a different crime. *Hodson* is not persuasive on these facts, as the girls' information provided a basis for the municipal court judge to conclude probable cause existed.").

Defendant concedes that the warrant affidavit here contains a "bit more" than the warrant affidavit at issue in *Hodson*. (Doc. NO. 28 at 7). But he contends that the affidavit nevertheless fails to establish probable cause because (according to him) it does not establish a sufficient nexus in place and time to Defendant's home, since the affidavit did not include any allegations stating

---

[3] Elsewhere in the affidavit, Lt. Taylor avers that AG alleged she had been abused since she was eight years old, resulting in the conclusion that the abuse occurred during the previous ten years, rather than the previous seven years. The Court finds that this contradiction is likely the result of the "haste of the criminal investigation" under which officers must draft a search warrant. *Christian*, 925 F.3d at 310. Further, the Sixth Circuit has instructed that affidavits do not require exact "precision" and instead courts should focus on the totality of the circumstances when determining probable cause. *Id*. at 311. Doing that, the Court finds that despite the inconsistencies in the affidavit, the affidavit still leads to one conclusion: AG had been sexually abused by Defendant for some time while she was a minor.

that the abuse or recordings took place at 4480 Gamaliel Road. (*Id*.). "To justify a search, the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). The affidavit in support of the warrant must set forth "a nexus between the place to be searched and the evidence sought." *United States v. Beals*, 698 F.3d 248, 364 (6th Cir. 2012). "To meet the nexus requirement . . . the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. O'Connor*, 723 F. App'x 302, 307 (6th Cir. 2018).

In support of his argument, Defendant cites two Sixth Circuit cases, dealing with drug crimes where the court found no sufficient nexus. *See United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (noting that the Sixth Circuit has never held that "a suspect's status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home."); *United States v. McPhearson*, 469 F.3d 519, 526 (6th Cir. 2006) (finding a lack of a nexus between the defendant's drug possession on his front porch and the defendant's home). But by its nature, evidence of child pornography crimes is entirely different from evidence of drug crimes. *See United States v. Hampton*, 504 F. App'x 402, 404 (6th Cir. 2012) (stating that "[c]ollectors of child pornography . . . rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes.") (internal quotation marks omitted); *see also United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006) (stating that viewing child pornography is "much more tied to a place of privacy" and "seclusion").

The affidavit need not contain specific allegations that Defendant produced or possessed child pornography in his home, contrary to Defendant's contention (Doc. No. 28 at 8); rather, the affidavit need only have "alleged facts that create a reasonable probability" that he maintains child pornography in his home. *Tagg*, 886 F.3d 585. Viewing the totality of circumstances and

considering the "great deference" that is paid to the magistrate's finding of probable cause, the Court concludes that the allegations in the affidavit did in fact create a reasonable probability that Defendant possessed child pornography in his home. The warrant affidavit, as described above, included Lt. Taylor's statement that AG informed him that Defendant recorded and took photographs of the sex acts and Defendant currently resided at the Gamaliel Road address. Further, Lt. Taylor also indicated in the warrant affidavit that AG had lived with Defendant for the past four years in Macon County, Tennessee. Considering the nature of child pornography crimes, the Court concludes that these circumstances indicate that evidence of child pornography would likely be found at Defendant's residence. *See Christian*, 925 F.3d at 313 ("An affidavit need only present some connection, regardless of how remote it may have been . . . between the illegal activity and the place to be searched." (internal quotation marks and citations omitted)).

Could the affidavit have contained additional and more detailed factual allegations to get the Court there? Sure. But that is not the relevant question, and the answer to it gets Defendant nowhere; the Sixth Circuit has emphasized that courts must "look holistically at what the affidavit does show, instead of focusing on what the affidavit does not contain." *Id.* at 312. Doing so leads the Court to find that probable cause existed that Defendant's home contained child pornography. The reality is that, as *Christian* makes quite clear, probable cause is a forgiving standard for the prosecution upon any challenge to a magistrate's finding of probable cause.

Next, Defendant argues that the evidence on which the warrant is based is stale because the affidavit does not include a specific date in which the recordings/photographs occurred, and Defendant avers that these recordings/photographs could have been made "long ago." (Doc. No. 28 at 8). For a warrant to be upheld, the information on which the warrant affidavit is based cannot be "stale." *See United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) ("Because probable cause

to search is concerned with facts relating to a presently existing condition, there arises the unique problem of whether the probable cause which once existed has grown 'stale.'" (internal quotation marks and citations omitted)). "[T]he question of staleness depends on the 'inherent nature of the crime.'" *Id*. (citing *United States v. Henson*, 848 F.2d 1374, 1382 (6th Cir. 1988).

> Instead of measuring staleness solely by counting the days on a calendar, courts must also concern themselves with the following variables: "the character of the crime (chance encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?).

*Spikes*, 158 F.3d at 923.

In support of his argument, Defendant cites another case involving a drug crime: *United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006). In *Hython*, the Sixth Circuit held that reliance on the deficient warrant was not objectively reasonable because "[w]ithout a date or even a reference to 'recent activity,' etc., there is absolutely no way to begin measuring the continued existence of probable cause." 443 F.3d at 487. The supporting affidavit in *Hython* described a controlled buy at the defendant's residence, but did not specify the date on which the purchase took place. *Id*. at 482–83.

But as the Sixth Circuit has "explained on multiple occasions, child pornography is not a fleeting crime. And 'because the crime [of child pornography] is generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography.'" *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (citing *United States v. Paull*, 551 F.3d 516, 522 (6th Cir.2009)). In *Frechette*, the court specifically distinguished "cases involving narcotics" because unlike narcotics, "digital images of child pornography can be easily duplicated and kept indefinitely even if they are sold or traded. In short, images of child pornography can have an

8

infinite life span." 583 F.3d at 378 (citing *Paull*, 551 F.3d at 522). This is because "[c]ollectors of child pornography 'value their sexually explicit materials highly, rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes.'" *Id*. (quoting *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010)).

For these reasons, the Court concludes that the affidavit's omission of a specific date or time frame when the recordings or photographs were taken was not fatal to a finding of probable cause. Here, the affidavit alleges that AG informed Lt. Taylor that she and her sisters were assaulted "for the past 7 years." (Doc. No. 28-2 at 2). A common sense reading of the affidavit indicates that it implies strongly the abuse was still continuing, or at least had continued until nearly the time when AG reported the abuse, which in turn was at most two days before the affidavit was submitted.[4] The affidavit further so indicates by recounting AG's statement that she had lived with Defendant for the past four years in Macon County, Tennessee. Even assuming the recordings were taken several years ago, numerous courts have found that a similar delay between the target's acquisition of child pornography and law enforcement obtaining of a search warrant did not defeat probable cause. *See United States v. Prawdzik*, 484 F. App'x 717, 723 (3d Cir. 2012) (finding that pictures and videos of sexual abuse of minor over five-year period that had ended at

---

[4] In his reply, Defendant argues that the Court should not assume facts beyond what the warrant affidavit explicitly states. (Doc. No. 37 at 2 (citing *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016)). Defendant asserts that the warrant affidavit states that Defendant "*had* been having sex with [AG]" not that he "*has* been having sex with her." (*Id*. at 3 (citing Doc. No. 28-2 at 1)) (emphasis added). According to Defendant, "[b]y using the past perfect progressive tense instead of the present perfect progressive tense, the affidavit alleged that the sexual abuse was a continuous action that 'had already been completed by the time of another past action,' not that it was a continuous action that 'began in the past and is still going in the present.'" (*Id*. (citing Diana Hacker, *The Bedford Handbook* 377-79 (5th Ed. 1998))). The Court understands Defendant's point. Even so, the Court finds that a common sense reading of the warrant affidavit does not reveal, as Defendant contends, that the abuse occurred far in the past merely because the warrant affidavit included "had" instead of "has." The Sixth Circuit has emphasized that Courts should keep in mind that "police officers are mostly non-lawyers who must draft search-warrant affidavits 'on the basis of nontechnical, common-sense judgments[.]'" *Christian*, 925 F.3d at 310 (quoting *Gates*, 462 U.S. at 235-36). "With the benefit of hindsight, perhaps the affiant could have been more precise. But [Sixth Circuit] precedents do not require such as exacting degree of specificity." *Id*. In short, the Court cannot ascribe to the affiant's choice of "had" rather than 'has" the significance that Defendant asserts.

least three years prior to search warrant application had not grown stale); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (holding that three-year delay between acquisition of child pornography and search warrant affidavit did not render the supporting information stale); *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005) (finding that five-year-old information was not stale in child pornography case).

Thus, the Court finds that the warrant affidavit contained the appropriate nexus to Defendant's home to support a finding of probable cause.

### B. Good Faith Exception

Pursuant to *United States v. Leon*, 468 U.S. 897, 905 (1984), "the introduction of evidence obtained in violation of the Fourth Amendment is permitted in criminal trials when the evidence is 'obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.'" *United States v. Moorehead*, 912 F.3d 963, 968 (6th Cir. 2019) (quoting *Leon*, 468 U.S. at 909). A search warrant affidavit is insufficient for police to rely upon in good-faith if it is "bare bones." But if an affidavit is not bare-bones, it is one upon which an officer can rely in good-faith. *Christian*, 925 F.3d at 312.

"[T]o be considered bare bones, an affidavit must be 'so lacking in indicia of probable cause' as to make an officer's 'belief in its existence [] objectively unreasonable.'" *Id*. (quoting *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005))). An affidavit is barebones only if it "merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *Id.* (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004))). Further, "[t]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." *Id*. at 313 (citation and internal quotation marks omitted).

In this case, like in *Christian*, "it is impossible to deny that [the warrant affidavit] contains factual allegations, not just suspicions or conclusions." *Id*. For example, the warrant affidavit states that Lt. Taylor "was made aware that there was unlawful recording of the children by [Defendant] by talking to [AG]. [AG] stated that [Defendant] has recorded and took pictures of the sex acts that he committed with the her [*sic*] and her sisters[.]" (Doc. No. 28-2 at 2). It further alleged that based on the information provided by AG combined with Lt. Taylor's "training and experience with investigating child sex abuse, child molestation, and pedophilia[,]" there was probable cause to believe those recordings and pictures were "located inside of the home of [Defendant] located at [] Gamaliel Road in Red Boiling Springs, TN." (*Id*. at 2). Thus, this is not the type of "bare bones" affidavit upon which it would be objectively unreasonable for an officer to rely.[5] *See Christian*, 925 F.3d at 313.

Further, the "exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates" *Id*. (citing *Leon*, 468 U.S. at 916). Therefore, like in *Christian*, "[t]his is a particularly egregious case to misapply the good-faith exception given the utter lack of police wrongdoing."[6] *Id*. Accordingly, the Court finds that the good-faith exception applies.

---

[5] Although prevalent, the term "good-faith" as used in this context appears actually to be a misnomer. The "good faith" exception does not turn on the officers' "good-faith"—a subjective concept—but on whether their actions were objectively reasonable. *See United States v. Savoca*, 761 F.2d 292, 294 n.1, 295 (6th Cir. 1985). The Court does wonder, however, whether this principle has been qualified somewhat by *Christian*, which relied in part on the "utter lack of police wrongdoing," 925 F.3d at 313, a term which arguably could understood to include a lack of *subjective* bad faith on the part of the police.

[6] The Court realizes that generally, challenges to a search warrant affidavit based on lack of probable cause are based solely on the four corners of the affidavit. *See Hython*, 443 F.3d 480, 487. Accordingly, the Court has stuck to the four corner of the affidavit except insofar as it notes (in an observation that *Christian* plainly seems to countenance in connection with such a challenge) that the record does not reflect (within the four corners of the affidavit or otherwise) any indication of police wrongdoing.

11

## III. CONCLUSION

In sum, the Court finds that the warrant affidavit sufficiently demonstrated probable cause to search Defendant's residence for child pornography and in the alternative, the good-faith exception applies to prevent exclusion. Therefore, Defendant's Motion to Suppress (Doc. No. 28) is **DENIED**.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE